# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3697-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

C.N.,

    Defendant-Appellant,

and

M.N., JR.,

    Defendant-Respondent.

_____

IN THE MATTER OF M.N. and K.N.,
minors.[1]

_____

Argued October 20, 2025 – Decided November 10, 2025

---

[1] Todd Wilson, Designated Counsel, attorney for minor K.N., submitted a letter of non-participation on behalf of minor K.N. (Jennifer Nicole Selliti, Public Defender, Law Guardian, attorney).

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FN-03-0050-23.

Eric R. Foley argued the cause for appellant (Law Office of Louis Guzzo, attorneys; Eric R. Foley, on the briefs).

Mary L. Harpster, Deputy Attorney General, argued the cause for respondent Division of Child Protection and Permanency (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Mary L. Harpster, on the brief).

David W. Sufrin argued the cause for respondent M.N., Jr. (Zucker, Steinberg & Wixted, PA, attorneys, join in the brief of respondent Division of Child Protection and Permanency).

Julie E. Goldstein, Assistant Deputy Public Defender, argued the cause for minor M.N. (Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Julie E. Goldstein, of counsel and on the brief).

Todd Wilson, Designated Counsel, attorney for minor K.N., submitted a letter of non-participation on behalf of minor K.N. (Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney).

PER CURIAM

After a four-day fact-finding trial, a Family Part judge found the Division of Child Protection and Permanency had proven by a preponderance of the

A-3697-23

evidence that defendant C.N. had physically abused her son M.N., III. ("Mark")[2] (then twelve years old) by striking him, in violation of N.J.S.A. 9:6-8.21. Defendant appeals, mainly arguing that the weight of the evidence did not sustain the Division's burden of proof. She essentially contends that the child's allegations are exaggerated or false and were inadequately corroborated at trial. The Law Guardian for Mark joins with the Division in advocating that we uphold the trial court's decision.

Applying the governing legal principles under Title Nine and the strong deference we owe to the Family Part's factual and credibility findings, we affirm.

I.

Since the parties are familiar with the evidence and the case's procedural history, we need not describe the background in much detail. The following summary will suffice.

Defendant and M.N., Jr. ("the father")[3] are the biological parents of Mark (born in February 2010), and his younger sister K.N. (born in December 2013).

---

[2] We use initials and pseudonyms to protect the children's identities. N.J.S.A. 2A:82-46; R. 1:38-3(d)(12).

[3] Although the father was listed as a co-defendant in the Division's complaint, the case against him has been dismissed. He is a respondent in this appeal and joins with the Division and Mark's Law Guardian in urging affirmance.

A-3697-23

Pursuant to terms of their divorce, the parents shared joint physical and legal custody of the two children, who resided with each of them on an alternating week-by-week basis.

Specifically, the Division alleged that on Friday, October 14, 2022, defendant physically abused Mark in his bedroom by striking his arms and stomping on his ankle. These acts of physical violence followed an argument between defendant and Mark regarding Mark's feelings toward defendant's present husband (Mark's stepfather).

Mark reported the physical altercation to staff members at his middle school the following Monday, October 17, 2022. The school, in turn, contacted both the Division and Mark's father later that same day, alerting them to defendant's alleged acts of parental abuse.

An investigation ensued, involving interviews with Mark, his sister, defendant, and other witnesses. During the investigation, Mark additionally told the Division's intake investigator and a police detective that his mother had hit him with a belt in the past.

The Division's investigator described her intake interview with Mark as follows:

> we asked [Mark] basic safety questions, so we asked
> him who he feels safe with. I know he had reported he

A-3697-23

did not feel safe with mom, specifically stated that she abuses him and had specified that she hits him.  He, at that point, had showed me his arms with the bruising.  I had asked him what had happened, where he had stated that <u>on that prior Friday, which was 10/14/22, Mom basically had gone crazy and began hitting him.  He stated that he attempted to block the hits with his arms and put them in kind of like an X in front of his face, and that's when she had punched him or began punching him and then prior to leaving the room that she had stomped on his ankle.</u>

[(Emphasis added).]

A similar description was recounted by Mark in his interview with a detective from the County Prosecutor's Office, as observed by the Division's investigator:

> So [Mark] had reported [to the detective] similarly what he did to me [the intake investigator].  He stated that on that prior Friday, which was the 10/14/22, he was in the vehicle.  He attempted to talk to Mom about some of his feelings.  He reported it began an argument and that Mom hadn't been bad.  He stated that when they got home that Mom told him to go to his room.  He reported that Mom had put [Mark's sister] to bed and then came back into his room and had made a comment about not disrespecting her.  He reported that he was lying at the end of the bed on a beanbag and that <u>Mom had initially began to try to hit him with an open hand.  He ended up attempting to block that by crossing his arms in front of him and that's when Mom began to use a closed fist and was punching him.  He stated that prior to leaving the room that Mom had stomped on his ankle.</u>

[(Emphasis added).]

The Division referred the matter for a medical evaluation by Dr. Sarah Kleinle, M.D., a child abuse specialist with the CARES Institute. Based on her review of photographic evidence and witness statements, Dr. Kleinle diagnosed Mark as having been the victim of child physical abuse. There was no contrary expert opinion procured by defendant.

During the investigation, defendant denied striking Mark in the October 14 incident, although she did admit in an interview with the police that she had struck him in the past, leaving a mark above his eye on one particular occasion. The Division's investigator thereafter watched this recorded interview and testified as to what defendant had told the police.

The Division filed a complaint seeking care and supervision of Mark and his sister on October 26, 2022, contending that defendant had violated N.J.S.A. 9:6-8.21 by abusing Mark. The Division was granted care and supervision, with custody to continue in accordance with the parents' preexisting arrangements. However, according to defendant, she has not had any substantial interaction with Mark since November 2022.

The fact-finding trial was held on four nonconsecutive days from April to June 2023 before the Family Part. In addition to fact witnesses, the Division presented unrebutted expert testimony from Dr. Kleinle, who opined that the

photos of Mark's injuries taken three or more days after the incident were consistent with his allegations of being hit by defendant.

Furthermore, a school counselor testified about marks she observed on Mark's body on October 17, three days after the incident. The counselor did acknowledge that, in the past, Mark had told her he wanted to live with his father and, on at least one occasion, had openly expressed a hope that his stepfather would strike him so the court could remove him from his mother's home.

Defendant elected not to testify in her own defense. Her principal evidence came from several friends who attended a party with Mark at a bowling alley on Saturday, October 15. They testified they had not noticed any marks or bruises on his arms that day while Mark was wearing a short-sleeved shirt, and that he generally appeared to be in good spirits. The defense moved into evidence photographs taken from the bowling party, arguing that from the camera angles and distances involved, no marks or bruises on Mark's arms are visibly discernable.[4]

The Law Guardian for Mark did not call any witnesses, but did support the Division's allegations of defendant's Title Nine violation. A separate Law Guardian for Mark's sister took no position on the case.

---

[4] The bowling photos do not show the condition of Mark's ankles.

A-3697-23

Upon considering the evidence and the summations of counsel, Judge Lisa James-Beavers found the Division had met its burden by the necessary preponderance of the evidence. Among other things, the judge specifically found the expert testimony of Dr. Kleinle to be "most credible," and further deemed the school counselor's testimony to be credible.

In her oral opinion, the judge relied on the following evidence to corroborate Mark's allegations: (1) the confirmations of the intake investigator, Dr. Kleinle, the father, and the school counselor that Mark had sustained physical injuries on his arms and ankle, which they observed on or after October 17; (2) Dr. Kleinle's expert opinion that Mark's injuries had resulted from child abuse; (3) defendant's admission to the police of having hit Mark in the past; (4) the sister's statements to the intake investigator that she often heard Mark being hit "non-stop"; and (5) the sister's statement to the intake investigator that she similarly heard Mark being hit by his mother on October 14, 2022.

The trial judge rejected defendant's claim that the testimony of the bowling party guests and the photographs of the October 15 gathering disproved the Division's allegations. The judge explicitly noted the partygoers at that festive occasion would have had "no reason to concentrate on whether there were any marks or bruises on [Mark]."

8

The judge accordingly concluded, as a matter of law, that defendant had physically abused her son in violation of N.J.S.A. 9:6-8.21. Consistent with the Division's classification of the case as one in which abuse was "established," but not "substantiated," see N.J.A.C. 3A:10-73(h), defendant was not placed on the Child Abuse Registry. This "FN" docket case was subsequently dismissed, and certain issues were designated for resolution in the parents' separate "FM" matrimonial litigation docket.[5] Among other things, the court ruled that, subject to developments in the FM case, Mark would not be required to visit with defendant if he did not wish to see her.

## II.

On appeal, defendant raises three principal issues: (1) the trial court erred in finding she abused Mark and in the manner it corroborated his allegations; (2) the court improperly failed to hold a final dispositional hearing after its fact-finding; and (3) the court erroneously granted Mark sole discretion over visitation and declined to order rehabilitative reunification therapy.

In evaluating these arguments, we are guided by well-established principles under the statute and case law. To prove that abuse or neglect has

---

[5] We were advised at oral argument by the respective private counsel for each of the parents that the FM case is still pending concerning visitation, therapy, and other post-judgment disputes.

occurred in a Title Nine case, the Division has the burden of showing by a preponderance of competent, material, and relevant evidence "that the child is an abused or neglected child."  N.J.S.A. 9:6-8.46.  Abuse or neglect occurs when:

> [a] child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court.
>
> [N.J.S.A. 9:6-8.21(c)(4) (emphasis added).]

The statute does not require that the child experience actual harm. N.J.S.A. 9:6-8.21(c)(4)(b); see also N.J. Division of Youth and Fam. Servs. v. F.M., 211 N.J. 420, 449 (2012) (explaining that the Division need not wait until a child is irreparably impaired by a parent's inattention or neglect to intervene) (citing In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999)).  Rather, a child can be abused or neglected if the child's physical, mental, or emotional condition has been "impaired or is in imminent danger of becoming impaired."  N.J.S.A. 9:6-8.21(c)(4).  "Abuse and neglect cases are generally fact sensitive," and the court must consider the totality of the circumstances in determining whether the

Division has met its burden of proof. N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 33-34 (2011).

The abuse and neglect standard is satisfied when the Division demonstrates that a parent has failed to exercise a "minimum degree of care." G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 181 (1999) (citation omitted). A minimum degree of care encompasses conduct that was grossly or wantonly negligent, but not necessarily intentional. Id. at 178. Wanton negligence is conduct that occurs with the knowledge that injury is likely to result. Ibid. A parent's action or inaction can rise to the level of wanton negligence even if the parent did not intend to cause injury to his or her child. Id. at 179. The Court has recognized that a parent is liable for the foreseeable consequences of his or her choices, "regardless of whether [he or she] intended to cause injury." Ibid.

Here, as is often the case in Title Nine litigation brought by the Division, the abused child did not testify. However, a special hearsay exception, N.J.S.A. 9:6-8.46(a)(4), explicitly authorizes the admission of "previous statements made by the child relating to any allegations of abuse or neglect" in Title Nine cases, provided "no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect" (emphasis added).

11

Corroborative evidence under this statutory hearsay exception may be circumstantial, as there is often no direct physical or testimonial evidence available to support a child's statements. N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002); see also N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 161 (App. Div. 2018). Further, such corroborative evidence does not need to independently prove that abuse or neglect occurred, nor does it necessarily have to directly relate to the alleged abuser at all; rather, it need only amount to "[s]ome direct or circumstantial evidence [of abuse or neglect] beyond the child's statement itself . . ." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 522 (App. Div. 2017) (emphasis added); see also A.D., 455 N.J. Super. at 161.

A critical aspect of our appellate role in such matters is the narrow scope of review. In abuse or neglect cases, our review of a trial court's factual findings is limited. N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 505 (App. Div. 2016) (citing N.J. Div. of Youth & Fam. Servs. v. I.H.C., 415 N.J. Super. 551, 557 (App. Div. 2010)). "'Only when the trial court's conclusions are so "clearly mistaken" or "wide of the mark" should an appellate court intervene and make its own findings to ensure that there is not a denial of justice.'" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88,

12

104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007))). When applying this deferential standard, we must remain cognizant that the very purpose of Title Nine is "to protect children 'who have had serious injury inflicted upon them' and make sure they are 'immediately safeguarded from further injury . . .'" N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 18 (2013) (quoting N.J.S.A. 9:6-8.8(a)).

Bearing in mind these standards, there is more than ample credible evidence to support the trial judge's factual findings, and her related conclusion that the corroboration element was satisfied. As noted by the trial judge, the evidence against defendant included the red marks on Mark's forearms and ankle, which the father photographed three days after the encounter and which the intake investigator subsequently photographed four days after the encounter. We accept the trial judge's assessment that the photos from the bowling party and the recollections of the party guests do not necessarily disprove that defendant struck Mark on the preceding day. The judge also rightly noted defendant's admission that she had smacked Mark on a previous occasion in August 2022, leaving a mark on his eye that was photographed by Mark's father.

Defense counsel argued to the trial judge that Mark is not credible because he is biased against the stepfather and had a motive to be allowed to live full

13

time with his father. That motive may well exist, but the judge found that, on balance, the account of Mark regarding the October 14 incident was more credible than not. In addition, as we noted above, the trial judge found the Division's unrebutted expert to be highly credible, and that expert credibility finding warrants deference. City of Long Branch v. Liu, 203 N.J. 464, 491 (2010); Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961). We therefore affirm the trial court's Title Nine determination that defendant physically abused her son, regardless of whether she intended to harm him.

Apart from the merits, we are unpersuaded that the trial court was required to conduct a "dispositional hearing" under N.J.S.A. 9:6-8.51 after it made its findings of abuse. A post-trial dispositional hearing is not required where, as here, the FN litigation was not removing the parent's custodial status. N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 387-88 (2009). The trial judge did not rescind defendant's custodial rights. Her physical and legal custody was maintained throughout the FN litigation and, indeed, the younger sister continued to stay with her on an alternating basis with the father. The FN judge made no determination that Mark cannot be "safely returned" to defendant's custody. N.J. Div. of Youth and Fam. Servs. v. N.D., 417 N.J. Super. 96, 106-

07 (App. Div. 2010) (citing G.M., 198 N.J. at 402). The FN judge expressly deferred to the judge handling the FM case the parents' ongoing disputes over custody matters. There was no need in this setting to conduct a separate hearing in the FN docket. Any reunification therapy that is warranted can and should be addressed in the FM proceedings.

This brings us to defendant's final argument, in which she contends that the trial court improperly gave Mark (who we note is now a fifteen-year-old teenager) the discretion to choose whether and when he is prepared to be with her. As the Law Guardian has aptly noted, the discretion concerning Mark's visits was designed to be a temporary measure, pending the custody proceedings in the FM case. The Court's decision in N.J. Div. of Child Prot. & Perm. v. J.C., 257 N.J. 451 (2024), was issued in the setting of a Title Thirty case, not a Title Nine case such as this one, and defendants' citation to it is inapposite. We express no views about visitation or therapeutic reunification and accordingly leave those issues to be resolved forthwith in the Family Part under the sound oversight of the FM judge.

To the extent we have not addressed them, we detect no merit to any of defendant's remaining arguments. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15